# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronnie Jo Dixon,                         :
                        Petitioner       :
                                         :
            v.                           :   No. 261 C.D. 2016
                                         :   Submitted:  July 8, 2016
Workers' Compensation Appeal             :
Board (County Homemakers, Inc.),         :
                        Respondent       :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**              **FILED:  September 8, 2016**


Ronnie Jo Dixon (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) awarding Claimant $250.00 in unreasonable contest attorney's fees pursuant to Section 440(a) of the Workers' Compensation Act[1] (Act).[2]  On appeal, Claimant argues that the WCJ erred in not awarding all of the requested attorney's fees based on the WCJ's conclusion that County

---

[1] Act of June 2, 1915, P.L. 736, added by Section 3 of the Act of Feb. 8, 1972, P.L. 25, as amended, 77 P.S. § 996(a).

[2] The WCJ's Decision also dismissed Claimant's Claim Petition as moot, granted her Penalty Petition, and awarded a 10 percent penalty.  Only the attorney's fees portion of the Decision was appealed to the Board and to this Court.

Homemakers, Inc.'s (Employer) contest ended when it voluntarily began paying indemnity benefits to Claimant in July 2014, rather than when Employer legally accepted liability for Claimant's injuries in January 2015. Discerning no error, we affirm.

Claimant filed a Claim Petition on February 17, 2014, alleging that she sustained an injury to her right arm and right shoulder on November 16, 2013, "during the process of rolling a client in bed while she was working as a Personal Care Assistant" for Employer. (WCJ Decision, Evidence ¶ 1a; R.R. at 9a.) Claimant sought total disability benefits commencing on January 17, 2014, medical benefits, and attorney's fees. Claimant also filed a Petition for Penalties (Penalty Petition) asserting that Employer had violated the Act and associated regulations by not accepting or denying liability for Claimant's injuries within 21 days, and because "there was no legal justification for the Employer's decision to deny liability." (Id. at ¶ 1b.) Both Petitions were assigned to the WCJ on February 28, 2014. "Ultimately[,] the parties entered into an Agreement for Compensation [(Agreement)], . . . [which] rendered many of the issues in the Claim Petition moot."[3] (Id. at ¶ 2.) However, the Agreement did not resolve Claimant's requests for attorney's fees or penalties, and the parties sought a decision from the WCJ on those issues. (R.R. at 81a.)

Prior to the Agreement being filed with the Bureau of Workers' Compensation (Bureau), the WCJ held three hearings: March 28, 2014, October

---

[3] The Agreement can be found at pages 80a-81a of the reproduced record. In the Agreement, Employer accepts liability for work-related injuries in the nature of "[r]ight arm strain, right shoulder impingement syndrome, and possible rotator cuff tear." (R.R. at 80a.) The Agreement further sets forth Claimant's periods of temporary total disability and partial disability, and provides that "[a]ny future disability benefits owed to claimant will be based on her weekly earnings and addressed in future Supplemental Agreements." (R.R. at 81a.)

2

24, 2014, and January 16, 2015. (Id. ¶ 5.) The WCJ found the following after those hearings. Claimant sustained injuries in the course of her employment on November 16, 2013, and was involved in a non-work related motor vehicle accident on January 3, 2014 after which she began missing work. Employer issued a Notice of Workers' Compensation Denial (NCD) on January 6, 2014, based upon the motor vehicle accident.[4] (WCJ Decision, Findings of Fact (FOF) ¶ 11.) On May 22, 2014, Claimant underwent an independent medical examination (IME) with Steven E. Kann, M.D., the results of which supported Claimant's contention that her injuries and disability were work-related. (Evidence ¶ 4.) The IME also ruled out the motor vehicle accident as contributing to or aggravating those injuries. (Id. ¶ 4, FOF ¶ 11f; Kann's Medical Report at 3, R.R. at 27a.) Based on the IME results, Employer "began paying . . . Claimant disability benefits on July 8, 2014, dating back to January 17, 2014."[5] (Evidence ¶ 4.) Employer escrowed a 20% attorney's fee.[6] Although Employer began paying disability benefits to Claimant on July 8, 2014, Employer did not file any documents with the Bureau altering its previously-issued NCD, reflecting that it accepted liability, or indicating that the parties had entered into an agreement regarding Claimant's injuries. Instead, the Agreement, dated December 1, 2014, was not executed and filed with the Bureau until January 2015, and Claimant's counsel did not receive a

---

[4] The WCJ noted that Claimant worked modified duty work between the time the work injury occurred and the accident in January 2014. (Evidence ¶ 8.)

[5] The WCJ further found that there was no evidence of when Employer received Dr. Kann's IME report or if Employer could have obtained the results prior to receiving the report. (Id. ¶ 9.)

[6] The WCJ held a hearing on March 28, 2014, at which Claimant's attorney fee agreement, reflecting a 20% fee, was entered into evidence, and the WCJ approved that fee via interlocutory order dated October 30, 2014.

copy until January 28, 2015. (Id.) This delay was caused by Employer's insurance adjuster not signing the Agreement before it was sent to Claimant's counsel. (WCJ Decision, Conclusion of Law (COL) ¶ 3.)

Claimant's counsel stipulated that Employer's contest was reasonable up until the IME on May 22, 2014, but maintained that, following that date, "there was an unreasonable delay in getting the claim properly accepted and getting . . . Claimant paid her benefits."[7] (Evidence ¶ 6.) Employer's counsel asserted that any delay was not egregious. (Id.) The WCJ found that there was no evidence that Employer's issuing the NCD more than 21 days after she notified it of the injuries had any impact, financial or otherwise, on Claimant or the Bureau. (Id. ¶ 7.) The WCJ further found that there was no evidence that Employer had refused to pay for any of Claimant's treatments. (Id. ¶ 10.) As for Claimant's attorney's fees, the WCJ found that counsel and a paralegal worked 18.1 hours on this matter after May 22, 2014, of which less than 1 hour of work occurred between the issuance of the IME report on May 22, 2014, and Employer's beginning to pay Claimant disability benefits on July 8, 2014. (FOF ¶ 11i.) The WCJ also found the record lacking in evidence regarding the reasonableness of the Claimant's counsels' rates, $250.00/hour, but that Employer did not present evidence contesting that hourly fee, arguing instead that no fee award was justified in this matter. (Id. ¶ 11j-k.) Nevertheless, the WCJ found the evidence of the reasonableness of the $250.00 hourly fee credible and convincing. (Id. at ¶ 11.)

---

[7] In addition to the delay in issuing a document accepting liability for Claimant's injuries, there appears to have been a delay in Employer paying Claimant the benefits due from January 17, 2014 through April 2014. (Emails between Claimant's Counsel and Employer's Counsel dated August 4, 2014, through September 2, 2014; Hr'g Tr., 10/24/2014, at 5.)

4

Based on these findings of fact, the WCJ made the following conclusions of law:

2. The Employer . . . ha[s] not established that [it] had a reasonable basis for [its] contest beyond the date of Dr. Kann's IME on May 22, 2014. *However, [its] contest continued only through some time in July of 2014 when [it] began paying the Claimant. According to the hourly time record submitted . . ., the work they performed during the period of time amounted to less than one (1) hour.* Accordingly, I conclude as a matter of law that counsel fees in the amount of $250.00 should be taxed against [Employer] as an additional item of cost. *The remainder of the work that was done was mainly directed towards getting the Bureau documents completed properly as opposed to proving a claim that [Employer was] no longer denying at that point.*

3. I further conclude as a matter of law that [Employer] violated the Act and the applicable Rules and Regulations by failing to issue a timely Notice of Denial or Medical Only Temporary Notice of Compensation Payable or other appropriate Bureau document within twenty-one (21) days after [it] was aware of this injury, and by failing to issue a Notice of Compensation Payable [(NCP)] *when [it] accepted liability in July of 2014 and began paying the Claimant's accrued disability benefits* instead of waiting another six (6) months to get an Agreement for Compensation signed by the Claimant and her Attorneys and the insurance adjuster. The Agreement would have been fully executed in early December if the adjuster would have simply signed it before it was sent to the Claimant's Attorneys. However, I further conclude that the imposition of a severe penalty is not appropriate as there is no evidence of any actual harm being done to the Claimant by not having the proper paperwork filed earlier; and that a penalty in an amount equaling ten percent (10%) of the Claimant's accrued benefits through January 28, 2015, is an appropriate penalty for this case.

(COL ¶¶ 2-3 (emphasis added).)

5

Claimant appealed to the Board challenging only the WCJ's award of $250.00 in attorney's fees.[8] Claimant argued that the WCJ erred in concluding that Employer's contest of the Claim Petition ended in July of 2014 when Employer began paying Claimant indemnity benefits and that she was not entitled to any unreasonable contest attorney's fees after that date. According to Claimant, the contest did not end until the litigation concluded and that the WCJ should have awarded the full amount of attorney's fees requested. The Board affirmed, holding that the WCJ did not abuse his discretion in not awarding the full amount of the requested attorney's fee because the WCJ "made the findings required by Section 440(b)" of the Act.[9] (Board Op. at 4.) The Board stated that it deferred "to the WCJ's expertise and ability to exercise administrative notice in determining a reasonable rate for the relevant locality and to evaluate the Section 440(b) factors." (Id.) Claimant now petitions this Court for review.[10]

On appeal, Claimant reiterates her argument that the WCJ erred in concluding that Employer's contest of the Claim Petition ended when Employer

---

[8] Employer did not appeal the WCJ's Decision.

[9] Section 440(b) was added by Section 3 of the Act of February 8, 1972, as amended, 77 P.S. § 996(b). That section provides, in relevant part:

> (b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended.

Id.

[10] Our review of decisions of the Board is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Marazas v. Workers' Comp. Appeal Bd. (Vitas Healthcare Corp.), 97 A.3d 854, 858 n.3 (Pa. Cmwlth. 2014).

began paying Claimant indemnity benefits on July 8, 2014, rather than in January 2015, when Employer legally accepted liability for the injury via the fully executed and filed Agreement. Claimant asserts that, notwithstanding Employer's voluntary payment of benefits beginning on July 8, 2014, Employer filed no documents with the Bureau, such as an NCP, legally accepting liability for Claimant's work-related injuries. According to Claimant, during the period between July 8, 2014, and January 2015, her counsel was required to attend two hearings, make phone calls, draft correspondence, and prepare proposed findings of fact for the WCJ, all because Employer would not issue the proper documentation for accepting liability. Claimant asserts that the eight month delay between the time Dr. Kann issued the IME report and the date Employer finalized the Agreement accepting liability was not credibly explained by Employer. Thus, Claimant argues, Employer failed to meet its burden that it had a reasonable contest to the Claim Petition following the May 22, 2014, IME report and continuing through to its acceptance of liability via the Agreement in January 2015.

Employer responds that the WCJ's determination awarding Claimant only $250.00 in unreasonable contest attorney's fees is supported by substantial evidence because Claimant began receiving indemnity benefits on July 8, 2014, Employer did not refuse to pay for any of Claimant's treatments, and Claimant was not harmed by any delay in the issuance of a finalized Bureau document accepting liability. Employer asserts that, even though Claimant's counsel had to perform additional work in this matter after July 8, 2014, the additional hearings and paperwork were related to issues other than having to prove a claim. Moreover, Employer argues that the WCJ correctly found that the work performed after July 8, 2014, was directed at obtaining a properly completed Bureau form, rather than

having to prove the existence of a claim because Employer was no longer denying that claim.

Under Section 440(a) of the Act,[11] claimants who successfully litigate a contested case are entitled to an award of reasonable attorney's fees unless an employer presents a "reasonable basis for the contest." 77 P.S. § 996(a). The purpose of Section 440(a) is "to deter unreasonable contests by employers and to insure that a successful claimant receives compensation undiminished by necessary costs of litigation." Papernik v. Workmen's Comp. Appeal Bd., 399 A.2d 1205, 1207 (Pa. Cmwlth. 1979). The question of whether a contest is reasonable within the meaning of Section 440(a) is a question of law subject to our de novo review. Lindemuth v. Workers' Comp. Appeal Bd., (Strishock Coal Co.), 134 A.3d 111, 127-28 (Pa. Cmwlth. 2016). We "look to the totality of the circumstances surrounding the contest" to determine "whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant." Pa. State Univ. v. Workers' Comp. Appeal Bd. (Sox), 83 A.3d 1081, 1089 (Pa. Cmwlth. 2013).

---

[11] Section 440(a) provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

Id.

8

Claimant's argument is premised on her assertion that Employer continued to *contest* the Claim Petition because it did not enter into the Agreement until December 2014 and did not file the Agreement with the Bureau until January 2015, thereby requiring her counsel to work to obtain official documentation from Employer accepting liability for Claimant's injuries. Neither the Act nor the regulations define the term "contest," but the dictionary defines it as "to make subject of litigation: dispute or resist by course of law . . . CONTEST suggests the raising of the issue, the bringing into open question of the matter over which there is conflict." Webster's Third New International Dictionary 492 (2002). Although Employer did not officially accept, in a Bureau document, Claimant's injuries as work-related until the Agreement, Employer began paying Claimant the indemnity benefits *she had sought via the Claim Petition* on July 8, 2014. Consequently, as of July 8, 2014, Employer was no longer making Claimant's eligibility for such payments based on her work injuries the "subject of litigation: dispute or resist[ance] by course of law." Id. We acknowledge that Claimant's counsel had to make some efforts to obtain the Agreement and was required to attend several hearings after the IME and before the Agreement was entered. However, as pointed out by the WCJ, these efforts were not associated with having to *prove* any of the elements of a Claim Petition, (COL ¶ 2), because, in paying Claimant indemnity benefits, Employer had conceded that she was entitled to those benefits.

With regard to Claimant's counsel having to draft proposed findings of fact, counsel would have had to do so regardless of when Employer filed the Agreement because there were issues left unresolved by the Agreement that had to be addressed by the WCJ, specifically, the Penalty Petition and request for unreasonable contest attorney's fees. Thus, this work was not related to assisting

9

Claimant in meeting her burden of proof on the Claim Petition, but in proving violations of the Act and/or the accompanying regulations and that Employer's *ongoing* contest was unreasonable. However, after July 8, 2014, there was no longer an *ongoing contest* over Claimant's eligibility for workers' compensation benefits. Moreover, although there was a delay in the issuance of the formal documentation in which Employer accepted liability, which formed one of the bases for the WCJ issuing a 10 percent penalty, the WCJ found that Claimant was not harmed by the delay because Employer continued to pay both indemnity and medical benefits notwithstanding the lack of a formal acceptance. (FOF ¶¶ 7, 10; COL ¶¶ 2-3.)

Finally, as observed by the WCJ and affirmed by the Board, much of the time spent by counsel during the time period after July 8, 2014, was corresponding with Employer about obtaining the Agreement officially accepting liability for Claimant's injuries. (COL ¶ 2.) Section 440(b) of the Act provides, in relevant part:

> (b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable *based upon the complexity of the factual and legal issues involved*, the skill required, the duration of the proceedings and the time and effort required and actually expended.

77 P.S. § 996(b) (emphasis added). Here, the WCJ reviewed the nature of the work performed after Employer began to pay indemnity benefits in July 2014, and, essentially, concluded that this work did not warrant an award of *quantum meruit* attorney's fees under Section 440(b).

For these reasons, we discern no error in the WCJ's finding that Employer's contest of the Claim Petition ended in July 2014 or in awarding Claimant only

$250.00 in unreasonable contest attorney's fees. Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronnie Jo Dixon,                                        :
                          Petitioner      :
                                           :
                         v.                :     No. 261 C.D. 2016
                                           :
Workers' Compensation Appeal               :
Board (County Homemakers, Inc.),            :
                        Respondent      :

# **O R D E R**

**NOW**, September 8, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge